IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | 3:09-CV-01238-L-BH |
| | § | |
| PROVIDENT ROYALTIES, LLC, ET AL. | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to the *Standing Order of Reference* filed March 11, 2010, this case was referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of facts and recommendations on dispositive motions. Before the Court are *Plaintiff's Motion for Summary Judgment Against Defendant Joseph S. Blimline*, filed October 15, 2012 (doc. 393), and the *Motion for Judgment as to Defendant Joseph S. Blimline*, filed November 19, 2012 (doc. 397). Based on the relevant filings, evidence, and applicable law, the summary judgment motion should be **GRANTED**, and the motion for judgment should be **DENIED as moot**.

## I. BACKGROUND

On July 1, 2009, the Securities and Exchange Commission (SEC) filed a complaint against several business entities and three individuals, alleging that they violated Section 17(a) of the Securities Act of 1933 (Securities Act), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 (Rule 10b-5). (*See generally* doc. 1.) On December 3, 2009, the SEC amended its complaint to also

name Joseph S. Blimline (Defendant) as a defendant.  (*See generally* doc. 85.)[1]  Defendant filed an

answer on March 10, 2011, in which he admitted to most of the allegations of the amended

complaint.  (*See generally* doc. 286.)  On October 15, 2012, the SEC moved for summary judgment

based on Defendant's admissions.   (*See* doc.  393.)[2]  The relevant admissions are summarized as

follows:

Defendant, along with three other individuals, founded Provident Royalties, LLC

(Provident).  (doc. 286 ¶¶ 10-13 (referencing doc. 85 ¶¶ 10-13, 50).)  Between September 2006 and

February 2009, Provident solicited and sold limited partnership interests or preferred stocks to

investors through 21 affiliated corporations and limited partnerships.[3]  (doc.  286 ¶ 16 (referencing

doc.  85 ¶¶ 51-55).)  Each share of stock was offered and sold through a Private Placement

Memorandum (PPM).  (doc.  286 ¶ 16 (referencing doc.  85 ¶¶ 51-55).)

The PPMs included misrepresentations and omissions.  (doc.  286 ¶¶ 1-2 (referencing doc.

85 ¶¶ 1-2).)  They represented that at least 86% of the investors' funds would be used to purchase

oil and gas assets only for the specific project that the investors funded, but the investments were

commingled among different entity accounts based on immediate needs.  (doc.  286 ¶¶ 29, 32

(referencing doc.  85 ¶¶ 80, 83).)  They also stated that the funds raised in one project would not be

used to pay dividends for another project, but the funds were actually transferred freely to pay

---

[1]The three individuals from the original complaint entered into separate settlement agreements with the SEC, and judgments were entered against them in 2010 and 2012.  (docs.  255, 352, 377, 378.)

[2]After Defendant failed to respond, the SEC filed a motion for judgment based on this failure. (doc.  397.)

[3]Each offering had a limit on the number of investors and the maximum amount to be raised, and when either of these limits was reached, another entity was created.  (doc.  286 ¶ 17 (referencing doc. 85 ¶ 63.)

dividends to earlier investors in other projects.  (doc.  286 ¶¶ 29, 41 (referencing doc.  85 ¶¶ 80, 94).)

Only the first two PPMs recognized Defendant as an officer, and they failed to disclose that Defendant was Provident's largest shareholder and a control person.  (doc.  286 ¶ 47.)  The PPMs also failed to disclose that the State of Michigan had previously entered a cease-and-desist order against Defendant for securities violations.  (doc.  286 ¶¶ 66-67 (referencing doc.  85 ¶¶ 119-20).)  The PPMS did not disclose that Defendant also separately owned and controlled other entities that received loans from, or engaged in property transactions with, Provident.  (doc. 286 ¶ 15 (referencing doc. 85 ¶ 50).)  The investors were not made aware that Defendant's entities received millions of dollars from Provident, including unsecured loans.  (doc.  286 ¶ 58 (referencing doc.  85 ¶ 111).)

Provident ultimately raised approximately $485,000,000 from at least 7,700 investors.  (doc. 286 ¶ 1 (referencing doc.  85 ¶ 1).)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*. In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

Once the movant makes this showing, the non-movant must produce evidence that establishes a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (per curiam) (citing Fed. R. Civ. P. 56(c)(1)).

### III. ANALYSIS

The SEC moves for summary judgment on its claims that Defendant violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. (doc. 394 at 26-27.) It also seeks a permanent injunction to enjoin Defendant from committing future federal securities violations and acting as an

officer or director of a public company, disgorgment all funds received, prejudgment interest on the

disgorged amount, and imposition of a civil monetary penalty against him.  (doc.  394 at 40.)

**A.      Securities Fraud Claims**

Section 10(b) of the Exchange Act makes it unlawful

> for any person, directly or indirectly, by the use of any means or instrumentality
> of interstate commerce or of the mails, or of any facility of any national securities
> exchange– . . . [t]o use or employ, in connection with the purchase or sale of any
> security . . . any manipulative or deceptive device or contrivance in contravention
> of such rules and regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  Rule 10b-5, promulgated under the SEC's rule-making authority, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material
> fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would
> operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2009).  To establish violations of Section 10(b) and Rule 10b-5, the SEC is

required to show that Defendant made a material misstatement or omission, in connection with the

purchase or sale of securities, with *scienter.  SEC v.  Gann*, 565 F.3d 932, 936 (5th Cir.  2009).  The

SEC must essentially establish these same elements in order to establish a violation of Section 17(a)

of the Securities Act .[4]  *See SEC v. Spence & Green Chem.  Co.*, 612 F.2d 896, 903 (5th Cir.  1980)

("[T]he proscriptions of section 17(a) are substantially the same as those of section 10(b) and rule

10b-5"); *see also S.E.C. v. Seghers*, 298 F. App'x 319, 327 (5th Cir. 2008); *S.E.C. v. Brooks*, 1999

WL 493052 at *2 (N.D. Tex. July 12, 1999).  "Scienter, however, is not an element of a claim under

§ 17(a)(2) or § 17(a)(3).  Under these subsections, liability is established merely by a showing of

negligence." *SEC v. Hopper*, 2006 WL 778640 at *9 (S.D.Tex. Mar.  24, 2006) (citations omitted);

*Seghers*, 298 F.  App'x at 327.  As the SEC notes, Defendant's answer specifically admits the

elements required to establish that he made material misstatements or omission in connection with

the purchase or sale of securities, with *scienter*.  (doc.  394 ¶ 56 (referencing doc.  286 ¶¶ 88-92).)

### 1.    Material misrepresentation or omission

 "[T]he standard for misrepresentation is whether the information disclosed, understood as

a whole, would mislead a reasonable potential investor. [And a] statement or omitted fact is material

if there is a substantial likelihood that a reasonable investor would consider the information

important in making a decision to invest." *Seghers*, 298 F. App'x at 328 (citations and internal

---

[4] Section 17(a) states in relevant part:

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> > (1) to employ any device, scheme, or artifice to defraud, or
> >
> > (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
> >
> > (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

marks omitted); *see S.E.C. v. Gann*, 565 F.3d 932, 937 n.17 (5th Cir. 2009).

The SEC presented undisputed evidence that Defendant made misrepresentations and omissions of important facts. (doc. 394 ¶¶ 21-25.) Misrepresentations included (1) that 86% of the investments by the investors would be devoted to purchasing oil and gas assets for the specific project invested; and (2) that the monies invested in a specific project would not be funneled to another project for dividend payments. (doc. 286 ¶¶ 29, 32, 41 (referencing doc. 85 ¶¶ 80, 83, 94).) Omitted disclosures were (1) that Defendant had a controlling interest in, and a principal of, Provident (doc. 286 ¶¶ 47, 72 (referencing doc. 85 ¶ 125)); (2) that the State of Michigan entered a cease-and-desist order against him for securities violations (doc. 286 ¶¶ 66-67 (referencing doc. 85 ¶¶ 119-20)); and (3) that Defendant's entities received millions of dollars from Provident, including unsecured loans (doc. 286 ¶ 58 (referencing doc. 85 ¶ 111)). Defendant admitted that the investors would have thought the misrepresentations and omissions in the offering materials were important. (doc. 286 ¶¶ 42, 72, 73, 75.) Therefore, the SEC carried its burden to prove that Defendant made material misrepresentations and omissions. *See S.E.C. v. Brooks*, 1999 WL 493052, at *2 (N.D. Tex. July 12, 1999) (finding material misrepresentations and omissions where the defendant misrepresented to the investor show their funds would be used, commingled investment funds, used the funds for personal use, and failed to disclose his past failure to make interest payments); *see also SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004).

### 2.      In connection with sale of securities

"The Supreme Court has adopted a broad reading of the "in connection with" requirement, reasoning that "the statute should be construed not technically and restrictively, but flexibly to

effectuate its remedial purposes." *Hopper*, 2006 WL 778640 at *11 (citing to *SEC v. Zanford*, 535 U.S. 813 (2002)). The SEC presented undisputed evidence that Defendant made misrepresentations and omissions in securities materials, e.g. PPMs, to defraud the investors. (doc. 286 ¶¶ 47, 88, 90, 92.) The PPMs were used to sell securities. (doc. 286 ¶ 16 (referencing doc. 85 ¶ 54).) This element is also satisfied.

### 3.    <u>With scienter</u>

*Scienter* is "the mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). This requirement may also be satisfied by proof that the defendant acted with severe recklessness. *See Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981) (en banc.) Severe recklessness is "not merely simple or even inexcusable negligence," *Meadows v. SEC*, 119 F.3d 1219, 1226 (5th Cir. 1997), but is defined as highly unreasonable omissions or misrepresentations that constitute an extreme departure from the standards of ordinary care, where these omissions or misrepresentations present a danger of misleading buyers or sellers that the defendant either knows exists, or is so obvious a danger that he must have been aware of it. *Broad*, 642 F.2d at 961-62.

As discussed, the SEC presented undisputed evidence that Defendant admitted acting with *scienter*. (doc. 394 at 26-28.) Defendant knowingly failed to disclose (1) the fact that he was a principal of Provident; (2) his past securities violations that resulted in a cease-and-desist order; and (3) that Provident had transferred millions of dollars to his entities. *See United Energy Partners, Inc.*, 88 F.App'x at 746 ("[I]t is obvious that the summary judgment record showed [the defendants] acted with intent to defraud."). He also admitted that the investors would have thought the misrepresentations and omissions in the offering materials were important. (doc. 286 ¶¶ 42, 72, 73,

75.) The knowing material misrepresentations and omissions show that Defendant acted with a high degree of *scienter*.  In addition, by showing *scienter*, the SEC has met the lower burden of negligence for violations of sections 17(a)(2) and (a)(3).  *See Meadows*, 119 F.3d at 1226; *see also Seghers*, 298 F. App'x at 336.

Because the SEC has satisfied its burden to bring forward evidence establishing each element of each of its claims, the burden shifts to Defendant to produce evidence that establishes a genuine issue of material fact.  He failed to respond to the SEC's summary judgment motion and failed to meet his burden.  The SEC's summary judgment motion should therefore be granted.

**B.      Remedies**

The SEC seeks a permanent injunction enjoining Defendant from future violations of Secton 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.  It also seeks a permanent bar against Defendant's service as an officer or director of a public company under Sections12 or 15(d) of the Exchange Act and Section 20(e) of the Securities Act as well as disgorgement, prejudgment interest, and imposition of a civil penalty against Defendant pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

**1.      Permanent Injunction**

In determining whether a defendant should be permanently enjoined for violations of the Securities Act and the Exchange Act, courts should consider: (1) the egregiousness of the defendant's conduct; (2) the isolated or recurrent nature of the violation; (3) the degree of *scienter*, (4) the sincerity of the defendant's recognition of his transgression; and (5) the likelihood of the defendant's job providing opportunities for future violations.  *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978).

In this case, the SEC has presented undisputed evidence that Defendant, in concert with three other principals of Provident, sought to defraud approximately 7,700 investors into investing approximately $485,000,000 by misrepresenting how the investment founds would be used and how the investors would be paid their dividends.   Further, he intentionally failed to disclose his relationship with Provident, the cease-and-desist order from the State of Michigan, and the fact that Provident had transferred millions of dollars to his entities.   His actions qualify as egregious and recurrent.   Moreover, Defendant's role in hiding the information on his relationship with Provident and his past record demonstrate that he acted with a high degree of *scienter*.   Defendant expressed no remorse for his wrongful conduct.   Given the prior order, if a permanent injunction is not imposed, he could engage in similar transgression in the future.   Therefore, a permanent injunction is warranted.

### 2.   **Bar**

The SEC also seeks to have Defendant banned from acting as a director or officer of any public company because he is unfit to serve in those capacities under 15 U.S.C. § 78u(d)(2).   (doc. 394 at 51-53.)   When determining "unfitness" bars, courts consider: (1) the egregiousness of the underlying violation; (2) the defendant's prior offenses; (3) the defendant's role when he engaged in the violations; (4) the degree of *scienter*; (5) the defendant's economic stake in the violation; and (6) the likelihood that the misconduct will occur again.   *SEC v. Patel*, 61 F.3d 137, 141 (2d. Cir. 1995); *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979).

As noted above, Defendant's violation was egregious, and he acted with a high degree of *scienter*.   Defendant committed prior violations of securities law as evidenced by the cease-and-desist order entered against him in Michigan.   As an active participant of the fraud, Defendant also

admitted to being an officer and control person of Provident.  (doc. 286 ¶ 47 (referencing complaint ¶ 100).)  Moreover, he played a central role in engaging in the violations of the antifraud provisions and he directly benefitted from the scheme.  Defendant's prior behavior shows a high likelihood that he will engage in similar misconduct if he is not barred from acting as a director or officer of a public company.  The bar should therefore be imposed.

### 3.    **Disgorgement**

The SEC also seeks disgorgement in the amount of $16,577,551 against Defendant.  (doc. 394 at 50.)  Disgorgement "is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs."  *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (internal citation and quotation marks omitted).   A district court retains "broad discretion in fashioning the equitable remedy of a disgorgement order."  *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993).  Since disgorgement is remedial rather than punitive in nature, it should be limited to property "causally related" to the violative conduct.   *Allstate Ins. Co.*, 501 F.3d at 413. "Accordingly, the party seeking disgorgement must distinguish between that which has been legally and illegally obtained."  *Id.*  However, "[i]n actions brought by the SEC involving a securities violation, 'disgorgement need only be a reasonable approximation of profits causally connected to the violation.'"  *Id.* (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)). Once the SEC makes that showing, the burden shifts to the defendant to establish that the disgorgement figure was *not* a reasonable approximation.  *First City Fin. Corp.*, 890 F.2d at 1232.

The SEC presents a declaration by the court-appointed receiver, who calculated that Defendant had misappropriated approximately $16,577,551 from the defrauded investors.  (doc. 394-1 at 2.)  By failing to respond, Defendant failed to establish that the amount was not reasonable.

Further, although Defendant was ordered to pay restitution, "[d]isgorgement does not aim to compensate the victims of the wrongful acts, as restitution does.  Thus, a disgorgement order might be for an amount more or less than that required to make the victims whole.  It is not restitution." *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993).  Based on Defendant's continual deception and failing to disclose the financial transactions between Provident and his related entities in the millions of dollars, disgorgement of $16,577,551 should be granted.

### 4.     Prejudgment Interest

The SEC also seeks an award of prejudgment interest on the disgorgement award in the amount of $1,766,463.48.  (doc.  394 at 50.)  "Courts have recognized that an assessment of prejudgment interest, like the disgorgement remedy, is intended to deprive wrongdoers of profits they illegally obtained by violating the securities law."  *SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003) (internal quotations and citations omitted).  Prejudgment interest is ordinarily calculated according to the Internal Revenue Service's ("IRS") underpayment rate. *See First Jersey*, 101 F.3d at 1476 (approving application of IRS underpayment rate for calculating prejudgment interest on amounts disgorged due to securities violations).

The SEC has provided the prejudgment interest calculation based on the IRS rate during the relevant period.  Prejudgment interest in the amount of $1,766,463.48 should be granted.

### 5.     Civil Penalties

Finally, the SEC seeks an award of a civil penalty under section 20(d) of the Securities Act and section 21(d)(3) of the Exchange Act in an amount to be determined by the Court, although it suggests that due to Defendant's egregious conduct, the highest possible civil monetary penalty would be appropriate.  (doc.  394 at 54-56.)

Under the Securities Act and the Exchange Act, the penalty provisions establish a three-tier penalty structure with an increasing amount of penalty based on the egregiousness of the conduct. *See SEC v. Blackwell*, 2012 WL 13564, at *4 (N.D.Tex. Jan. 4, 2012). A first-tier penalty can be imposed based on a showing of a violation of the Securities Act. *SEC v. Reynolds*, 2013 WL 3479825, at *4 (N.D.Tex. July 11, 2013). A second-tier penalty can be imposed upon a showing that that the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* (citations omitted). Finally, a third-tier penalty is appropriate when, in addition to the showing of fraud, the violation "directly or indirectly resulted in substantial losses to other persons." *Id.* (citations omitted); *see also United Energy Partners, Inc.*, 88 F.App'x at 747. Section 20(d) of the Securities Act allows imposition of a penalty of up to $120,000 per securities violation for a natural person, or the gross amount of pecuniary gain from the violation–whichever is greater. 15 U.S.C. § 77t(d), 17 C.F.R. § 201.1002 (2005). Much like the factors for injunction or officer and director bar, some courts have examined the following five factors in determining whether such a penalty should be imposed: (1) the egregiousness of the defendant's conduct; (2) the degree of *scienter*; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the conduct was isolated or recurrent; and (5) the cooperation of the defendant with law enforcement authorities. *SEC v. Amerifirst Funding, Inc.*, 2008 WL 1959843, *7 (N.D. Tex. May 5, 2008) (citing *SEC v. Opulentica*, 479 F. Supp.2d 319, 331 (S.D.N.Y. 2007)).

Here, Defendant's conduct was egregious, he acted with a high degree of scienter, his conduct resulted in a loss to investors approximately $485,000,000, and his repeated conduct involving dozens of entities spanned over two years. The record includes no evidence regarding his

cooperation with law enforcement.  Defendant has provided no evidence of his inability to pay a penalty, or that a reduction in the maximum amount is warranted.  The Court may impose a civil penalty even assuming that Defendant is unable to pay it.  *SEC v. Allen*, 2012 WL 5986443, *2-3 (N.D. Tex. Nov. 28, 2012); *SEC v. Harris*, 2012 WL 759885, *5 (N.D. Tex. Mar. 7, 2012) (citing *SEC v. Warren*, 574 F.3d 1368, 1370 (11th Cir. 2008)).

Although the disgorgement and prejudgment interest awards recommended are substantial, because Defendant's conduct was egregious, committed with high degree of *scienter*, and resulted in substantial loss to the investors, a third-tier civil penalty is appropriate.  *Reynolds*, 2013 WL 3479825 at *6 (imposing third-tier penalty in light of a defendant's conduct).  Therefore, the maximum penalty of $16,577,551[5] suggested by the SEC is appropriate.

## IV.  RECOMMENDATION

The SEC's motion for summary judgment should be **GRANTED,** and the Court should order that:

1.     Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise shall be permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)     to employ any device, scheme, or artifice to defraud;
    (b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
    (c)     to engage in any act, practice, or course of business which operates or would

---

[5]The maximum penalty is the amount equal to the "gross amount of pecuniary gain to such defendant as a result of the violation."  15 U.S.C. § 78u(d)(3).  The SEC provided evidence that Defendant's personal gain was approximately $16,577,511.  (doc. 394-1 ¶ 6.)

operate as a fraud or deceit upon any person.

2.      Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise shall be permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)      to employ any device, scheme, or artifice to defraud;

(b)      to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)      to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

3.      Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], Defendant shall be prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

4.      Defendant shall be liable for disgorgement of $16,577,551 a total representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $1,766,463.48 for a total of $18,344,014.48. Defendant shall satisfy this obligation by paying $18,344,014.48 to the Securities and Exchange Commission within 14 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.   Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number,

15

and name of this Court; Joseph Blimline as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action.  By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval.  The Court shall retain jurisdiction over the administration of any distribution of the Fund.  If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of this Final Judgment.  Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

5.     Defendant shall pay a civil penalty in the amount of $16,577,551 to the Securities and Exchange Commission pursuant to 15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d)(3).  Defendant shall make this payment within 14 days after entry of this Final Judgment.  Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Joseph Blimline as a defendant in this action; and specifying that payment is made pursuant to the Final Judgment.

6.     The Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of the Final Judgment.

The SEC's motion for judgment should be **DENIED as moot**

16

**SO RECOMMENDED**, this 26th day of August, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

18